IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  NO. CR-03-2241 JP

EDDIE VALLEJOS,

      Defendant.

### MEMORANDUM OPINION AND ORDER

Beginning on April 20, 2004, Defendant Eddie Vallejos was tried before a jury on two charges: carjacking and aiding and abetting in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2 (Count I); and using a firearm in connection with a crime of violence and aiding and abetting in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2 (Count II). At the close of the Government's case-in-chief, and again at the close of all the evidence, Defendant moved for a judgment of acquittal under FED. R. CRIM. P. 29(a) on the ground that there was insufficient evidence to support a conviction on either count, and on the ground that the federal carjacking statute is unconstitutional because it exceeds Congressional authority under the Commerce Clause. Tr. at 265, 312. The Court reserved decision on Defendant's motion under FED. R. CRIM. P. 29(b) and submitted the case to the jury. Tr. at 272, 313. The jury found Defendant

guilty on both counts.[1]  On April 30, 2004, this Court issued an Order (Doc. No. 37) granting the parties an extension of time to file memoranda of law relating to Defendant's Motion for Judgment of Acquittal.  Defendant's motion is now fully briefed.  Having reviewed the briefs, the trial transcript, and the relevant case law, the Court finds that Defendant's motion should be granted.

## I.      STANDARD OF REVIEW

In considering a motion for judgment of acquittal, a court will review all the evidence in the light most favorable to the Government to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  See United States v. Monts, 311 F.3d 993, 1000 (10th Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  A court will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict.  United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).  The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw reasonable inferences from the basic facts to the ultimate facts.  See United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998).   "Although the jury may draw reasonable inferences from direct and circumstantial evidence, such inferences must be more than speculation and conjecture in order to be reasonable, and the conviction may not be obtained by piling inference upon inference."  United States v. Leos-Quijada, 107 F.3d 786, 794 (10th Cir. 1997).  "The evidence

---

[1] At trial the Government sought Defendant's conviction for both counts solely on a theory of aiding and abetting.  See Tr. at 15.  Moreover, in its Response to Defendant's motion, the Government's argument regarding the sufficiency of the evidence focuses solely on whether the evidence was sufficient to support Defendant's conviction as an aider and abetter, rather than as a principal, for both the carjacking and firearm crimes.  Resp. (Doc. No. 39) at 7, 10.  Accordingly, the Court concludes that Defendant's conviction on both counts was based on a theory of aiding and abetting, and will evaluate whether the evidence was sufficient to support Defendant's conviction as an aider and abetter, rather than as a principal.

supporting the conviction must be substantial," and do more than raise a mere suspicion of guilt.

See United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997).

## II.    EVIDENCE IN SUPPORT OF JURY VERDICTS

The evidence presented at trial in support of the jury verdicts, viewed in the light most favorable to the Government, revealed the following facts.  On May 4, 2003, a Cinco de Mayo celebration was held at Cahoon Park in Roswell, New Mexico.  Tr. at 23.  The festivities included a car show, which individuals from nearby towns traveled to Roswell to attend.  Tr. at 23, 67. Among those who came to Roswell for the car show were Raul Tabarez, the driver of a black Chevrolet Extreme pickup truck, and his passenger Eric Gutierrez.  Tr. at 157.  Around 6:30 in the evening, after the car show had concluded, Tabarez and Gutierrez got into Tabarez' truck and joined a procession of vehicles that were slowly "cruising" the streets around the perimeter of the park.  Tr. at 25, 157, 179.

While Tabarez and Gutierrez were cruising the park, two men emerged from the park and began walking in the middle of the street in the same direction in which Tabarez' truck and the procession of vehicles of which it was a part were slowly moving forward.  Tr. at 27-29, 70, 113. One of the men was not wearing a shirt, and had the word "Sanchez" tattooed across his back. Tr. at 72.  This man, later identified as Robert Sanchez[2], proceeded to put on a sports jersey and continued walking in the middle of the street along the line of vehicles toward the rear of Tabarez' truck.  Tr. at 28, 71.  The other individual, later identified as Defendant, was wearing a white

---

[2]  Robert Sanchez pled guilty to state law criminal charges in CR-2003-283 in the District Court of Chaves County in the Fifth Judicial District of the State of New Mexico for robbery; aggravated assault; receipt, transportation, or possession of firearms; criminal damage to property; and resisting, evading, or obstructing an officer.  See Def. Trial Ex. 16.

undershirt, and his arms and neck were covered with tattoos.  Tr. at 48, 71, 72, 119.  Another

distinctive feature about Defendant is his "bad eye," which was caused by an injury Defendant

sustained in his youth.  Tr. at 16, 160, 277.  As a result of his injury, Defendant is completely

blind in his right eye, and has severely impaired vision in his left eye.  Id.  Defendant's damaged

right eye has an abnormal appearance.

At some point, Defendant split off from Sanchez to walk along the passenger side of the

line of vehicles behind Tabarez' truck.  Tr. at 76, 85, 95.  The two men stopped briefly alongside

a brown car, which was traveling in the procession several cars behind Tabarez' truck.  Tr. at 74,

97.  Sanchez spoke briefly to several unidentified women in the brown car, and exclaimed to the

women "watch this."  Tr. at 74-75, 97-98.  Sanchez and Defendant then proceeded to walk

forward in the direction of Tabarez' vehicle.  Tr. at 74-75, 97-98, 118.

Defendant re-joined Sanchez in the middle of the street as the two men approached the

rear of Tabarez' vehicle.  Tr. at 76, 98.  When they reached Tabarez' truck, Sanchez suddenly

opened the driver's door, pulled out a gun and stuck it against Tabarez' ribs.  Tr. at 183-85.  At

the time that Sanchez stuck his hand inside Tabarez' truck, Defendant was standing close behind

and slightly to the side of Sanchez.  Tr. at 162.  After opening the door, in a low voice Sanchez

told Tabarez to "get out," and uttered some curse words in Spanish.  Tr. at 183-84.  Sanchez then

told Tabarez to "scoot over," and he began to get into Tabarez' vehicle.  Tr. at 183-85.

The only witnesses who saw that Sanchez held a gun were Tabarez and Gutierrez, both of

whom were sitting inside Tabarez' vehicle.  Tr. at 159-61,183-85.  Neither Tabarez nor Gutierrez

saw Sanchez carrying a gun as he approached Tabarez' vehicle; they only saw the gun after

Sanchez had opened the door and stuck his hand inside the truck.  The Government presented the

4

testimony of several other witnesses who watched Sanchez and Defendant walking up to the rear of Tabarez' truck.  None of those witnesses noticed that Sanchez was carrying a gun as he approached Tabarez' vehicle.[3]  Tr. at 27, 30, 39.  Moreover, none of those witnesses saw that Sanchez was holding a gun when he stuck his hand inside Tabarez' truck.  Tr. at 30, 39-40.

As Sanchez was entering the truck on the driver's side, Gutierrez, who was seated in the passenger seat, opened the passenger door to exit the vehicle.  Tr. at 77, 161.  At that point, Defendant came around to the passenger side of the truck and pushed Gutierrez away from the vehicle.  Tr. at 48, 161, 163.  Gutierrez then ran forward, away from Tabarez' truck, to another vehicle in the procession that was being driven by one of Gutierrez' friends.  Tr. at 31, 164. Tabarez followed Gutierrez out the passenger door of the truck.  Tr. at 183.  Defendant then jumped into the bed of Tabarez' truck, and Sanchez drove off rapidly and recklessly.  Tr. at 61, 78, 100.  Several minutes later, Sanchez drove back to the scene, where he pulled alongside the brown car occupied by the unidentified women.  Tr. at 79.  Sanchez exclaimed to the women "I told you so," and then drove off in a reckless manner.  Tr. at 79, 100, 101, 122.

Tabarez reported his stolen vehicle to a police officer who was at Cahoon Park.  Tr. at 34. Shortly thereafter, Roswell Police Department Detective Larry Huegler observed Tabarez' truck being driven by Sanchez, with Defendant still in the bed of the truck.  Tr. at 223.  Sanchez stopped and abandoned the truck on a residential street.  Tr. at 224-25.  Apparently, both

---

[3]  The witnesses who were called at trial were Aurelio Flores, Johnny Ramirez, Crysten Johnson, Jennifer Weber, and Timber Brown.  Tr. at 22-131.  These witnesses were riding in other vehicles that were cruising around the park that evening.  Aurelio Flores testified that he saw Sanchez and Defendant walking suspiciously in the street toward Tabarez' vehicle, but he did not observe a gun.  Tr. at 27, 29-30.  Mr. Flores testified that he saw Sanchez open the driver's door to Tabarez' truck and stick his hand inside, but Mr. Flores did not see what Sanchez held in his hand.  Tr. at 30, 39-40.  Mr. Ramirez, Ms. Johnson, Ms. Weber, and Ms. Brown all observed Defendant and Sanchez approach Tabarez' vehicle, but none of them testified to seeing a gun in Sanchez' hand at any time.  Tr. at 64, 76, 87, 94, 99,113, 121.

Sanchez and Defendant fled into the surrounding neighborhood.  Detective Huegler found Defendant hiding in a shed in the rear yard of a home near the point where Sanchez abandoned the truck, and subsequently arrested him.  Tr. at 226-27.  Police officers recovered from the bed of Tabarez' truck a stereo that had been removed from the vehicle's dashboard.  Tr. at 196, 234.

## III.   DISCUSSION

Defendant argues in his motion for judgment of acquittal that the Government presented insufficient evidence for a jury to find beyond a reasonable doubt that Defendant was guilty of the crimes for which his was charged and ultimately convicted.  In considering Defendant's motion under FED. R. CRIM. P. 29(b), the Court will examine only the evidence that had been presented at the time that Defendant first made his motion at the close of the Government's case.  See FED. R. CRIM. P. 29(b); 26 MOORE'S FEDERAL PRACTICE § 629.03[4] (3d ed. 1999) (when court reserves ruling under Rule 29(b), it must consider only the evidence submitted at time the motion was made).

### A.   Aiding and Abetting the Offense of Carjacking

In order to prove that Defendant aided and abetted the crime of carjacking in violation of 18 U.S.C. § 2, the Government was required to show beyond a reasonable doubt that: 1) the crime of carjacking was committed by someone; 2) the defendant associated himself with the criminal venture; 3) the defendant participated in the criminal venture as something he wished to bring about; and 4) the defendant sought by his actions to make the criminal venture succeed.  See 18 U.S.C. § 2; United States v. Hanson, 41 F.3d 580, 582 (10th Cir. 1994).  The Tenth Circuit has stated that "A defendant may not stumble into aiding and abetting liability by inadvertently helping another in a criminal scheme unknown to the defendant . . . ."  Hanson, 41 F.3d at 582-83

6

(citing United States v. DeLuna, 10 F.3d 1529, 1533-34 (10th Cir. 1993)).

Defendant attacks his conviction for aiding and abetting the offense of carjacking on two grounds.  First, Defendant contends that there was insufficient evidence to satisfy the first element, that the crime of carjacking was committed by someone, because the Government failed to prove beyond a reasonable doubt that Sanchez had the requisite intent under 18 U.S.C. § 2119. Def. Mem. (Doc. No. 38) at 13. Next, Defendant argues that there was insufficient evidence to show that Defendant willfully associated himself with the criminal venture, because the Government failed to prove beyond a reasonable doubt that he shared the requisite criminal intent for the underlying carjacking offense. Id. at 14-15. The Court will analyze each of Defendant's arguments in turn.

    1.    Sufficiency of the Evidence to Show Sanchez' Conditional Intent

The federal carjacking statute, 18 U.S.C. § 2119, makes it a crime to "take[] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation" with "the intent to cause death or serious bodily harm."  18 U.S.C. § 2119; Holloway v. United States, 526 U.S. 1, 3 (1999); United States v. Malone, 222 F.3d 1286, 1291 (10th Cir. 2000).  The Supreme Court has held that the intent requirement of Section 2119 "is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car . . . ." Holloway, 526 U.S. at 12.  In other words, the Government may satisfy the intent requirement for Section 2119 by proving that the Defendant possessed only a "conditional intent" to kill or seriously injure the victim.  See Malone, 222 F.3d at 1291.  Moreover, the Tenth Circuit has held

that it is necessary to look at the "totality of the circumstances" to determine whether the words and actions of a defendant sufficiently demonstrate a conditional intent to cause death or serious bodily harm.  See id.

In this case, the evidence showed that Sanchez approached Tabarez' vehicle, opened the driver's door, stuck his hand inside the vehicle, and pressed a gun against Tabarez' ribs.  Sanchez spoke in a low voice, first commanding Tabarez to "get out," then cursing at Tabarez in Spanish, and then ordering Tabarez to "scoot over."   Based on this evidence, it was reasonable for the jury to find from the totality of the circumstances that at the moment he demanded control over Tabarez' vehicle, Sanchez possessed the conditional intent to seriously harm or kill Tabarez if necessary to steal the car.  See Unites States v. Adams, 265 F.3d 420, 425 (6th Cir. 2001) (physically touching a victim with a weapon, standing alone, is sufficient to show that defendant possessed conditional intent to cause death or seriously bodily injury in carjacking case); United States v. Williams, 136 F.3d 547, 552 (8th Cir. 1998) (pointing gun at driver's three year-old son sufficient to show conditional intent in carjacking case); United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998) (waving gun in victim's face sufficient to show conditional intent in carjacking case).

Defendant argues that the Government failed to show that the gun used by Sanchez was loaded or even functional, and that absent such evidence, a jury could not reasonably find that Sanchez possessed the necessary conditional intent.  Def. Mem. (Doc. No. 38) at 14.  Although Defendant is correct that the Government did not produce evidence showing the gun was loaded or functional, the Court will assume that the gun was loaded and functional because the record is devoid of any evidence to the contrary, and Defendant's counsel did not make any argument at

trial that the gun was unloaded or not functional.  See United States v. Jones, 188 F.3d 773, 777
n.2 (7th Cir. 1999) (court assumes that gun brandished by defendant in carjacking case was
loaded because record devoid of evidence to the contrary).

Defendant also argues that the fact that Sanchez did not harm Tabarez during the incident
distinguishes this case from other Tenth Circuit carjacking cases and indicates that Sanchez lacked
the necessary conditional intent to cause death or serious bodily injury.  Def. Mem. (Doc. No. 38)
at 15.  See, e.g., United States v. Brown, 200 F.3d 700, 705 (10th Cir. 1999) (fact that defendant
struck victim in face evidenced defendant's conditional intent in carjacking case).  Yet, the Tenth
Circuit has recognized that a victim's decision to give up his or her vehicle quickly in order to
avoid injury in no way negates the defendant's intent to cause death or serious harm.  See United
States v. Romero, 122 F.3d 1334, 1338 (10th Cir. 1997) (citing United States v. Anderson, 108
F.3d 478, 484-85 (3d Cir. 1997)).  In addition, a number of courts from outside the Tenth Circuit
have held that a defendant possessed the necessary conditional intent to cause death or serious
bodily injury in a carjacking case even in the absence of evidence that the defendant had actually
physically harmed the victim in any way.  See, e.g., Adams, 265 F.3d at 424-25; Jones, 188 F.3d
at 777; Lake, 150 F.3d at 272; Williams, 136 F.3d at 552.  Accordingly, the Court finds that there
was sufficient evidence to support the jury's finding that Sanchez had the necessary conditional
intent to cause death or serious bodily injury.

    2.    Sufficiency of the Evidence to Show Defendant's Intent as an Aider and Abetter

Defendant also argues that there was insufficient evidence to show that Defendant
"associated with the criminal venture," because at the time that Sanchez took Tabarez' vehicle,
Defendant did not possess the conditional intent to cause death or serious bodily harm if necessary

to take the vehicle.  See Def. Mem. (Doc. No. 38) at 13-14.  Defendant's argument appears to be premised on the proposition that in order to prove that Defendant "associated with the criminal venture," the Government must show that Defendant possessed the requisite criminal intent for the underlying carjacking offense.

It is well-settled that to be found guilty of aiding and abetting, a defendant must share in the intent to commit the underlying criminal offense.  See United States v. Thurmond, 7 F.3d 947, 950 (10th Cir. 1993); United States v. Smith, 838 F.2d 436, 441 (10th Cir. 1989).  Courts generally have stated that the Government may prove that a defendant "shares the criminal intent of the principal" by offering proof that the defendant was consciously aware of the principal's criminal intent to commit the underlying offense.  See, e.g., United States v. Loder, 23 F.3d 586, 591 (1st Cir. 1994).  Some courts from outside the Tenth Circuit have gone further and held that a conviction for aiding and abetting requires not only that the defendant be aware of the principal's criminal intent, but also that the defendant actually *possessed* the requisite criminal intent for the underlying substantive offense.  See United States v. Delgado, 357 F.3d 1061, 1065-66 (9th Cir. 2004); United States v. Valencia, 907 F.2d 671, 680 (7th Cir. 1990); United States v. Roan Eagle, 867 F.2d 436, 445 (8th Cir. 1989).  Under this interpretation of the aiding and abetting offense, a defendant could be found guilty of aiding and abetting a carjacking only if the defendant actually possessed the conditional intent to cause death or serious bodily injury.  However, the Tenth Circuit has not held that a conviction for aiding and abetting may only be supported by evidence that the defendant possessed the requisite criminal intent for the underlying substantive offense.  See, e.g., Smith, 838 F.2d at 441 ("To aid and abet one must share in the intent to commit the offense . . . the defendant need not commit all elements of the underlying

offense as long as he aided and abetted as to each element.").  Accordingly, this Court will not require the Government to prove that Defendant actually possessed the conditional intent to cause death or serious injury in order to support Defendant's conviction for aiding and abetting a carjacking.

However, Defendant's argument raises a related question: whether there was sufficient evidence to show that Defendant *knew* that Sanchez possessed the conditional intent to cause death or serious bodily injury.  Although the Court has found no published Tenth Circuit opinions that have discussed aiding and abetting a carjacking, two recent First Circuit decisions have concluded that a defendant may be found guilty of aiding and abetting a carjacking only if there is evidence that the defendant consciously shared some knowledge of the principal's criminal intent. See United States v. Evans-Garcia, 322 F.3d 110, 114 (1st Cir. 2003); United States v. Otero-Mendez, 273 F.3d 46, 51-52 (1st Cir. 2001).  In those cases, the First Circuit held that in order for the defendants to be guilty of aiding and abetting a carjacking, they must have known to a practical certainty that the principals possessed the conditional intent to inflict death or serious bodily harm.  Evans-Garcia, 322 F.3d at 114; Otero-Mendez, 273 F.3d at 51-52.  Since the First Circuit apparently is the only circuit to have analyzed the sufficiency of the evidence for the offense of aiding and abetting a carjacking in a reported decision as of this time, the Court will adopt the First Circuit's analysis in order to assess the sufficiency of the evidence against Defendant in this case.  Moreover, the facts and circumstances in the two First Circuit decisions lend considerable guidance for determining the sufficiency of the evidence in this case.

In United States v. Evans-Garcia, the defendant was convicted of aiding and abetting a carjacking after an incident in which he and five companions forcibly took a vehicle and killed the

vehicle's driver.  322 F.3d at 112.  The evidence showed that on the night the carjacking took

place, the defendant learned that one of his companions was armed with a firearm, and the

defendant subsequently informed one of his other companions that the group was going to

commit a carjacking.  Id.  The group drove to a nearby park, where they approached a car

occupied by a man and woman.  Id.  The defendant's companion drew his firearm and pointed it

at the victims, while the defendant ordered the victims into the rear seat of the vehicle.  Id.  As the

group drove away from the park with the victims still in the car, the defendant informed the

victims that they were "on the way to the cemetery," implying that the victims would be killed.

Id. at 113.  The court in Evans-Garcia held that this evidence was sufficient to support the

defendant's conviction for aiding and abetting the carjacking.  The court emphasized that the

direct evidence in the record indicated that the defendant was involved in the preparations for the

carjacking, that he was aware one of his companions would be armed, and that he told the victims

that they were "on the way to the cemetery."  Id. at 114-15.  The court held that this direct

evidence supported a finding that the defendant knew to a practical certainty that his co-

defendants possessed the conditional intent to cause death or serious bodily injury.  Id. at 115.

     In United States v. Otero-Mendez, the defendant was convicted of aiding and abetting a

carjacking following an incident in which he and four companions attempted to take a vehicle by

the use of force.  273 F.3d at 50.  The evidence showed that the defendant was driving a car with

four companions when the group collectively decided to forcibly take a vehicle that had passed

them on the roadway.  Id.  The defendant testified at trial that he had been aware that two of his

companions were armed at that time.  Id.  When the defendant pulled his car alongside the target

vehicle, which had stopped, two of his companions exited with their weapons visibly drawn, and

proceeded to advance toward the target vehicle.  Id.  The defendant's companions then exchanged gunfire with the target vehicle's driver, who later died of gunshot wounds.  Id.  The court in Otero-Mendez held that, based on the direct evidence that the defendant participated in planning to take the target vehicle, that he knew his companions were armed, that his companions had visibly drawn their weapons prior to attempting the carjacking, and that his companions had exchanged gunfire with the driver of the target vehicle during the carjacking, there was sufficient evidence to show that the defendant knew to a practical certainty that his co-defendants intended to use deadly force.  Id. at 52.

These two recent First Circuit decisions indicate that a conviction for aiding and abetting a carjacking can be supported by direct evidence that the defendant was actively involved in planning the carjacking, coupled with direct evidence that the defendant knew or became aware of the fact that the principals were armed.  Based on evidence of that nature, the First Circuit found that it was reasonable for a jury to infer that the defendants knew to a practical certainty that the principals possessed the conditional intent to inflict death or serious bodily harm.

This case presents a factual situation that is distinguishable from Evans-Garcia and Otero-Mendez in significant respects.  In this case the Government did not present any *direct* evidence that Defendant was actively involved in planning the carjacking, or that Defendant knew or became aware of the fact that Sanchez was armed.  It is true that a jury could reasonably infer that Defendant was aware of a plan to take Tabarez' truck from the evidence that Defendant was walking in tandem with Sanchez as the two men approached Tabarez' vehicle.  However, the evidence does not reasonably support an inference that Defendant also knew or became aware of the fact that Sanchez was armed.  Although Defendant was standing nearby when Sanchez

13

suddenly opened the door to the vehicle and stuck a gun in Tabarez' ribs, this evidence, standing alone, is not sufficient to support a reasonable inference that Defendant actually saw the weapon, either previously or at that time, in light of the fact that Defendant is completely blind in one eye and has severely diminished eyesight in the other.  Furthermore, the evidence is not sufficient to support an inference that Defendant heard words that would have indicated that Sanchez was armed, because the only words Sanchez said were "get out," followed by cursing in Spanish, followed by "scoot over."   The Government introduced no other evidence at trial to show that Defendant was aware that Sanchez was armed.

Moreover, even if it were reasonable for the jury to infer that Defendant knew or became aware of the fact that Sanchez was armed, this would not have constituted sufficient evidence to support a finding that Defendant also knew to a practical certainty that Sanchez possessed the conditional intent to inflict death or serious bodily harm.  In Evans-Garcia and Otero-Mendez, the First Circuit ruled that it was reasonable for the jury to make such an inference based on *direct* evidence that the defendants were aware that the principals would be armed.  Yet, here, the jury would be required to: 1) infer from circumstantial evidence Defendant's awareness that Sanchez was armed; and 2) then make a subsequent inferential leap that, based on this knowledge, Defendant also knew to a practical certainty that Sanchez possessed the conditional intent to cause death or serious bodily injury.  In other words, the jury would have had to impermissibly pile inference upon inference in order to find Defendant guilty as an aider and abetter.  See United States v. Anderson, 981 F.2d 1560, 1564-65 (10th Cir. 1992).

The Government argues that Defendant and Sanchez worked together as a "team," and that therefore Defendant is liable as an aider and abettor for the offense of carjacking.  Plf. Resp.

14

(Doc. No. 39) at 7-8.  In support of this argument, the Government points to the evidence

showing that: Defendant walked in tandem with Sanchez as they approached Tabarez' vehicle;

Defendant stood close behind Sanchez when he threatened Tabarez with a gun; Defendant went

to the passenger side of the vehicle and pushed Gutierrez; Defendant jumped into the bed of the

vehicle as Sanchez drove away; Defendant continued to ride in the bed of the vehicle until shortly

before they were apprehended by the police; and the police recovered a stereo from the bed of the

pickup, where Defendant had been riding.  This evidence, at most, may support a finding that

Defendant aided and abetted Sanchez with respect to the first three elements of the carjacking

offense, "taking a motor vehicle . . . from the person or presence of another by force of violence

or intimidation."  See 18 U.S.C. § 2119.[4]  However, this evidence does *not* support a finding that

Defendant aided and abetted Sanchez with respect to the fourth element of the carjacking offense,

that Sanchez acted with "the intent to cause death or serious bodily harm," because it does not

support a reasonable inference that Defendant knew to a practical certainty that Sanchez

possessed the conditional intent to cause death or serious bodily harm.  Accordingly, this evidence

is not sufficient to uphold Defendant's conviction for aiding and abetting a carjacking.  See Smith,

838 F.2d at 441 (holding that Government must show that defendant aided and abetted as to *each*

---

[4]  The Court notes that the evidence presented by the Government may have supported Defendant's
conviction for aiding and abetting other criminal offenses that were not charged in this case, such as the state law
criminal charges of robbery and assault for which Sanchez pled guilty in CR-2003-283 in the District Court of
Chaves County in the Fifth Judicial District of the State of New Mexico.

element of underlying offense) (emphasis added).  Thus, the Court will grant Defendant's motion as to the charges contained in Count I.[5]

### B.    Aiding and Abetting the Use of a Firearm

In order to prove that a defendant aided and abetted the use of a firearm during the commission of a crime of violence in violation 18 U.S.C. § 924(c)(1)(A)(ii), the Government must show beyond a reasonable doubt that the defendant willfully associated himself with the criminal venture and sought to make the venture succeed through some act of his own.  See Leos-Quijada, 107 F.3d at 794; United States v. McDonald, 150 F.3d 1301, 1305 (10th Cir. 1998).  In other words, the Government must show that Defendant "knowingly and intentionally assisted the principal's use of a dangerous weapon in a violent felony."   United States v. Taylor, 226 F.3d 593, 596 (7th Cir. 2000); see also Wright v. United States, 182 F.3d 458, 465 (6th Cir. 1999); United States v. Medina, 32 F.3d 40, 45 (2d Cir. 1994).  Courts have held that this requires findings that: 1) the defendant knew, either before or during the crime, of the principal's weapon possession or use; and 2) the defendant intentionally facilitated that weapon possession or use once so informed.  See, e.g., Taylor, 226 F.3d at 596; United States v. Garth, 188 F.3d 99, 113 (3d Cir. 1999).

In United States v. Taylor, the Seventh Circuit held that the evidence was sufficient to support the jury's finding that the defendant aided and abetted the use of a firearm during the commission of a carjacking.  226 F.3d at 597.  In that case, the government did not present direct

---

[5]  Since the Court will grant Defendant's motion with respect to Count I on the ground that there was insufficient evidence to support Defendant's conviction, Defendant's argument regarding the constitutionality of the federal carjacking statute is moot.  However, the Court notes that the Tenth Circuit recently has upheld the constitutionality of the carjacking statute.  See, e.g., United States v. Dixon, 52 Fed.Appx. 116, 117 (10th Cir. 2002) (unpublished decision); United States v. Garcia, 27 Fed.Appx. 957, 959 (10th Cir. 2001) (unpublished decision);  Brown, 200 F.3d at 709.

evidence that the defendant knew in advance his companion would be armed.  Id.  However, the court determined that the jury could have reasonably inferred the defendant's knowledge because the defendant had driven in a vehicle with his armed companion during an extended chase of the victim, and because the armed companion "wildly brandish[ed] his weapon" and shot the victim at the onset of the carjacking.  Id.  The court in Taylor also found that the defendant intentionally facilitated the use of the weapon by continuing to assist in the carjacking while his companion flagrantly brandished and used a firearm, and by knowingly aiding his armed companion to escape from the scene of a violent felony in which a firearm had been used.  Id.

By contrast, in United States v. Garth, the Third Circuit held that the evidence was insufficient to support the jury's finding that the defendant had aided and abetted the use of a firearm during the commission of a drug offense. 188 F.3d at 114.  In Garth, the defendant testified at trial that he had been aware that one of his companions was armed at the onset of the drug offense, so the evidence was sufficient to show that the defendant knew of the principal's possession of a weapon.  Id. at 103, 114.  However, the court found no evidence that the defendant attempted to facilitate the use of the weapon.  Id. at 114.  Rather, the evidence merely showed that the defendant had participated in the underlying drug offense by attempting to purchase train tickets for the purpose of traveling to distribute the drugs, while his companions carried a bag containing the drugs and a loaded firearm.  Id. at 103.  Based on this evidence, the court in Garth observed that the conduct of the defendant and his armed companion were not "so intertwined" as to support a finding that the defendant facilitated the use of the weapon.  Id. at 114.

17

Here, the facts and circumstances are much more akin to <u>Garth</u> than to <u>Taylor</u>, and accordingly, the Court concludes that there is insufficient evidence to support a finding that Defendant 1) knew of Sanchez' gun possession or use, and 2) intentionally facilitated Sanchez' gun possession or use.  As discussed above in the analysis of the carjacking conviction, the circumstantial evidence regarding Defendant's proximity to Sanchez does not support a reasonable inference that Defendant knew or became aware of the fact that Sanchez was armed. It is undisputed that Defendant's eyesight was severely impaired.  Unlike the situation in <u>Taylor</u>, there is no evidence that Defendant was together with Sanchez for an extended period of time prior to the commission of the carjacking, during which time Defendant could have learned that Sanchez was armed.  Rather, the evidence merely indicates that Defendant was walking in tandem with Sanchez in the street for a brief period as the two men approached Tabarez' truck. Furthermore, unlike the situation in <u>Taylor</u>, Sanchez was not wildly brandishing the firearm, nor did he discharge the firearm, so as to make Defendant aware of his firearm possession.  Rather, the evidence shows that Sanchez discreetly and quickly stuck his hand that held the firearm into Tabarez' vehicle immediately before telling Tabarez to get out.  Several trial witnesses had observed Sanchez and Defendant as they walked toward Tabarez' truck, but none of the eyewitnesses testified that they saw Sanchez holding a gun as Sanchez and Defendant approached the truck.

In addition, like the situation in <u>Garth</u>, there is no evidence that Defendant intentionally facilitated Sanchez' weapon possession or use in any way.  The evidence in this case merely shows that Defendant stood close to Sanchez when Sanchez drew a weapon and ordered Tabarez out of the truck.  Thereafter, Defendant went to the passenger side of Tabarez' truck and pushed

18

Gutierrez, and then subsequently hopped into the bed of Tabarez' truck as Sanchez drove off. There is no evidence that Sanchez continued to brandish or use his firearm while Defendant was performing these actions.  Moreover, while Defendant's actions during the incident may show that he facilitated the first three elements of the carjacking offense, "taking a motor vehicle . . . from the person or presence of another by force of violence or intimidation," it is insufficient to show that Defendant knowingly facilitated Sanchez' use of the firearm during the commission of the carjacking.  See United States v. Nelson, 137 F.3d 1094, 1104 (9th Cir. 1998) (evidence that defendant assisted in committing bank robbery knowing a gun would be used was insufficient, standing alone, to show that defendant aided and abetted use of firearm by co-defendant during robbery).  Thus, the Court finds that there is insufficient evidence to show that Defendant aided and abetted the offense of using a firearm during the commission of a crime of violence. Accordingly, the Court also will grant Defendant's motion with respect to the charge contained in Count II.

THEREFORE, it is ORDERED that Defendant's Motion for Judgment of Acquittal is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE