IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

        Plaintiff,

vs.                                              Case No. CR 03-2241 JP

EDDIE VALLEJOS,

        Defendant.

MEMORANDUM OPINION AND ORDER

THIS MATTER arises from Defendant Eddie Vallejos' March 10, 2006 Motion for New Trial based on his discovery of new evidence (Docket No. 54). At issue is whether the Government attorney's conduct violated Defendant's due process rights by substantially interfering with a defense witness' decision whether to testify for Defendant. After careful review, the Court finds that the Government substantially interfered with a defense witness' decision to testify and that the Government must either request use immunity for the witness or face dismissal of the indictment based on prosecutorial misconduct.

*I. Background*

The series of events giving rise to the present situation began on May 4, 2003, at a Cinco de Mayo celebration in Roswell, New Mexico. During the celebration, Robert Walter Sanchez forcibly took Raul Tabarez' black Chevrolet Extreme pickup truck by placing a gun against Mr. Tabarez' ribs and ordering him to "get out." Defendant, who was standing near Mr. Sanchez when this exchange took place, jumped into the bed of the truck shortly before Mr. Sanchez recklessly drove away from the scene. Defendant was subsequently arrested by a detective of the

Roswell Police Department.[1]  On May 12, 2005, Mr. Sanchez voluntarily surrendered himself to arrest by the Roswell Police Department.

On October 22, 2003, Mr. Sanchez pled guilty in the District Court of Chavez County in the Fifth Judicial District of the State of New Mexico to numerous state charges arising from the incident (Docket No. 41, at 3 n.2) (Transcript of jury trial, April 21, 2004, at 254, 258-263).[2] Although federal officials were involved throughout the investigation of the case, Mr. Sanchez has not been prosecuted by the federal government for this conduct.

However, on November 5, 2003, a federal grand jury returned a two count indictment against Defendant, charging him with **aiding and abetting** Mr. Sanchez in the federal offenses of carjacking and using a firearm in a crime of violence.  A jury trial was held from April 20, 2004 through April 22, 2004.  Because the Government relied on an **aiding and abetting** theory of culpability, a primary issue at trial was whether Defendant associated in the carjacking by sharing Mr. Sanchez' requisite conditional intent.  The Court found that Mr. Sanchez' conditional intent could be inferred by evidence establishing that Mr. Sanchez used a gun in the incident.  Likewise, Defendant's intent to associate himself with Mr. Sanchez' crime could be established by evidence supporting a finding that Defendant knew Mr. Sanchez used a gun.  Therefore, the primary dispute at trial was whether Defendant saw Mr. Sanchez place the gun against Mr. Tabarez' ribs or otherwise knew Mr. Sanchez used a gun in the incident.

---

[1] A full description of the relevant facts of this case is set forth, in detail, in the Court's July 24, 2004 Memorandum Opinion and Order (Docket No. 41)

[2] As noted in the Court's Memorandum Opinion and Order, Mr. Sanchez pled guilty to charges of robbery; aggravated assault; receipt, transportation, or possession of firearms; criminal damage to property; and resisting, evading, or obstructing an officer (Docket No. 41, at 3 n.2).

On April 22, 2004, a jury found Defendant guilty of the crimes of aiding and abetting a carjacking in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2 (Count I), and of aiding and abetting brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2 (Count II).  After the jury returned its verdict, Defendant moved for judgment of acquittal.  On July 24, 2004, the Court granted Defendant's motion, acquitted Defendant of all charges, and dismissed the indictment (Docket No. 41), (Docket No. 42).  In its Memorandum Opinion and Order granting Defendant's motion, the Court found that there was insufficient evidence to support a reasonable inference that Defendant knew Mr. Sanchez used a gun in the carjacking.  Consequently, the Court found that there was insufficient evidence to support a finding that Defendant associated with the carjacking by sharing Mr. Sanchez' requisite conditional intent.

The Government appealed the Court's judgment of acquittal to the United States Court of Appeals for the Tenth Circuit.  The Tenth Circuit reversed the Court's judgment in a 2-1 decision, and instructed the Court to reinstate the jury's verdict.  *United States v. Vallejos*, 421 F.3d 1119 (10th Cir. 2005).  In its opinion, a majority of the panel disagreed with the Court's sufficiency of the evidence findings, and instead determined that the evidence presented at trial was sufficient to give rise to a reasonable inference that Defendant saw Mr. Sanchez use a gun in the carjacking. In particular, the majority thought the Court placed too much emphasis on Defendant's significant visual impairment.  Circuit Judge McKay filed a dissent, in which he agreed with the Court that the evidence at trial was not sufficient to establish Defendant's guilt beyond a reasonable doubt.

On March 10, 2006, Defendant filed a Motion for New Trial (Docket No. 54).  In his motion, Defendant argues that he is entitled to a new trial based on newly discovered evidence.

Before trial was held in April 2004, Defendant's investigator had attempted to interview Mr. Sanchez to acquire information about the May 4, 2003 incident.  However, Mr. Sanchez refused to speak with Defendant's investigator.  Apparently, Mr. Sanchez held a personal grudge against Defendant and was angry because Defendant had disclosed incriminatory information about Mr. Sanchez to the police during the investigation of the crime.

However, several months after trial, Defendant received a letter from Mr. Sanchez expressing remorse for letting Defendant be convicted.  The letter states[3]:

> Here's a letra, to help out, if it's not to late!  I got it notarized too!  You can have that investigator come talk to me, or call me to court!  Spénca for letting you fall for nátha!  I'm not going to hold a pi?che gruge over Sonya!  But I know it wasn't right talking to the pi?che húda!  I know you never said my name, but you let them know everything else!  Either way I'm going to let that shit go!  It's over!  I will do my tiempo like a fucken soldier!  As far as I'm concerned, nothing ever happened between us!  <u>Orále</u>!!!  Well at least appeal the case if you have gotten sentenced!  (<u>My word</u>) I'll be there!
>                                          Alrato
>                                                  - Walter-

(Docket No. 54, Ex. B).  A notarized statement was attached to this letter:

> To whom it may concern:
> On the 5th of May 2003, I Robert Sanchez was riding around with Amanda Vallejos!  We picked up Eddie Vallejos!  Then we went by the Park (Cahoon Park)!  I got out of the van and started walking with the traffic!  I was drunk and really tired!  I did walk up to a truck and told the guys to get out at gun point!  Before I got in the truck I looked back and I saw Eddie on the other side of the truck, barley getting up to the truck!  I remember telling him to get in the back!  He (Eddie Vallejos) didn't know what I was doing!  I didn't even know myself, until I actually did what I did!   Eddie or Amanda didn't know about the gun either!

---

[3]     Mr. Sanchez' letter and notarized statement are quoted without grammatical or spelling corrections.

(Docket No. 54, Ex. B).  The notarized statement is signed by Robert Sanchez.  Although the statement is dated July 9, 2004, Defendant indicates that he did not receive the letter and statement until fifteen months after trial.  In his motion, Defendant indicated that Mr. Sanchez was now willing to testify on behalf of Defendant.  Defendant argued that Mr. Sanchez' testimony at an evidentiary motion hearing would provide a basis for a new trial, and requested that the Court provide him an opportunity to present Mr. Sanchez' exculpatory testimony.

The Government filed a response in opposition to Defendant's motion on March 17, 2006 (Docket No. 56).  In its response, the Government faulted Defendant for failing to subpoena Mr. Sanchez during trial, in spite of uncertainty about the testimony Mr. Sanchez may have given.  The Government further argued that the Court should deny Defendant's motion without an evidentiary hearing.  However, the Government requested that independent counsel be appointed for Mr. Sanchez if an evidentiary hearing were to be held.  The Government's response noted that "the Government is not rendering any opinion at this point about whether Mr. Sanchez would be charged with Carjacking or Brandishing a Firearm During a Crime of Violence if he were to admit to having committed these crimes at a judicial proceeding, or otherwise.  Furthermore, it will unlikely be undersigned counsel's decision to charge Mr. Sanchez with these federal crimes because counsel is being activated for military duty by the United States Army on March 20, 2006, for a period of one year."  (Docket No. 56, at 10 n.3).  The Government's response was signed by Assistant United States Attorney Randy Castellano.

On May 30, 2006, the Court held an evidentiary hearing on Defendant's motion for a new trial.  Defendant was present at the hearing and was represented by Attorney Bernadette Sedillo.

The Government was represented by Assistant United States Attorney Amanda Gould.  Mr. Sanchez was also present at the hearing and seated in the courtroom.

After counsel stated their appearances, the following exchange took place:

> THE COURT:  Okay.  The hearing this afternoon is an evidentiary hearing on the defendant's motion for a new trial.  Let me ask Ms. Sedillo, do you want to go ahead and present your first witness?
>
> MS. SEDILLO:  Yes, your honor.
>
> MS. GOULD:  Your Honor, if I may before we hear testimony from this witness, in his motion Mr. Castellano requested that the Court consider appointing Mr. Sanchez an attorney to explain to him what his possible penalties could be were he to be charged in a federal case which would result maybe from any testimony he would put forth on the stand today, and I would just put that out there, your Honor.  I did review Mr. Sanchez' criminal history.  Were he to be charged with carjacking and brandishing a firearm during a crime of violence, he could be facing significant time at the federal level if the decision were made to go ahead and prosecute him for those two crimes, which are different crimes for those which he received convictions at the state level.
>
> THE COURT:  Okay.  Well, let me ask Ms. Sedillo, have you discussed with Mr. Sanchez the matter of his ability to assert a Fifth Amendment right?
>
> MS. SEDILLO:  Your Honor, yes, I did tell him that the Government might request that an attorney be appointed to represent him and that I wasn't in a position to counsel him with regards to what he should do but that the decision would be his as to whether to assert a Fifth Amendment right or not.  But from talking to him, he told me that he would be willing to testify.  I don't know.  If we could address him and ask him at this point.
>
> THE COURT:  Well, I think he needs independent counsel to advise him.  I don't know who we could get on short notice to do that.  Why don't we recess and let me go see if it's possible to find somebody.
>
> MS. SEDILLO:  Thank you, your Honor.

(Trans. May 30, 2006, at 1-2).  The Court appointed Attorney Marcia Milner as independent counsel for Mr. Sanchez.  After consulting with counsel during a forty-minute recess,  Mr. Sanchez decided to invoke his Fifth Amendment right against self-incrimination and refused to testify.  Mr. Sanchez remained in the courtroom for the duration of the hearing.

During the remainder of the hearing, counsel for Defendant argued that the Government's threat to charge Mr. Sanchez if he should testify was unconscionable.  The Government's attorney proffered the following explanation:

> MS GOULD:  Well, your Honor, to begin with and to defend our position as far as the possible prosecution of Mr. Sanchez— because that's just what it is, of course.  We haven't sought to charge him at this point.  Were he to get on the stand today and essentially make a confession on the record before this Court, which has not been done prior to this time, that of course would give the Government a lot more to work with in a case against Mr. Sanchez than what there previously was.  So that having been said, it seemed the right thing to do is make sure Mr. Sanchez was advised of what his rights are and what the offenses are and that are different on the federal level than on the state level, but—and of course having walked in this late I am at a bit of a disadvantage, although I did read every page of what there was in the discovery and the transcripts that were made available to me in taking over this case from Mr. Castellano.

(Trans. May 30, 2006, at 6).  The Court ordered supplemental briefing on the issues arising from the May 30, 2006 motion hearing.

## II. Analysis

### 1. Substantial Interference with a Defense Witness

In his supplemental brief,  Defendant argues that the Government's threat to prosecute Mr. Sanchez if he testified violated Defendant's due process rights.  The right of a criminal defendant to present a defense by proffering the testimony of witnesses is a fundamental element

of due process. *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, a defendant's right to present a defense is not absolute, and may "bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). Thus, "a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege against self incrimination." *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005).

Nevertheless, "[s]ubstantial governmental interference with a defense witness's decision to testify violates a defendant's due process rights." *United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983). *See also United States v. Vavages*, 151 F.3d 1185 (9th Cir. 1998). The premier case on substantial interference with defense witnesses is *Webb v. Texas,* 409 U.S. 95 (1972). In *Webb*, the United States Supreme Court found that a trial judge's lengthy and intimidating admonishment against perjury to a criminal defendant's witness violated the defendant's due process rights. *Id.* at 97-98. The Court reversed the defendant's conviction because "the judge's threatening remarks . . . effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98. The Tenth Circuit has applied the reasoning of *Webb* to prosecutors. *Crawford*, 707 F.2d at 449.

In determining whether a prosecutor's interference with a potential defense witness has violated a defendant's due process rights, the central question is "whether the government actor's interference with a witness's decision to testify [is] 'substantial.'" *Serrano*, 406 F.3d at 1216 (quoting *Crawford*, 707 F.2d at 449). A prosecutor may violate a defendant's constitutional rights by "actively discourag[ing] a witness from testifying through threats of prosecution, intimidation, or coercive badgering." *Id.* (citing *United States v. Smith*, 997 F.2d 674, 693 (10th

8

Cir. 1993)). "The potential for unconstitutional coercion by a *government actor* significantly diminishes, however, if a defendant's witness elects not to testify after consulting an independent attorney." *Id.* (emphasis in original).

The Court believes that the Government's actions in threatening Mr. Sanchez with prosecution substantially interfered with Mr. Sanchez' decision to testify. As demonstrated by his July 9, 2004 letter, Mr. Sanchez was ready and willing to give exculpatory testimony on behalf of Defendant. However, the Government interjected the moment before Mr. Sanchez was to take the stand at the May 30, 2006 motion hearing.

At the hearing, the Government warned Mr. Sanchez of the severe consequences of his testimony, stating that Mr. Sanchez would face significant jail time at the federal level were he to be prosecuted federally *as a result* of any testimony he would make at the hearing. The Court acknowledges that the Government has an ethical duty to warn witnesses of the potential consequences of their testimony. However, in this case, the Government did not merely alert the Court and Mr. Sanchez to the possibility of incriminatory testimony, but instead went further and actively discouraged Mr. Sanchez from testifying by implicitly threatening prosecution and significant jail time if Mr. Sanchez were to testify at the motion hearing. The inappropriate and prejudicial nature of the Government's thinly veiled threats to prosecute Mr. Sanchez if, and only if, he were to testify on behalf of Defendant is further apparent in light of the peculiar facts of this case.

Even though the federal government was involved from the initial stages of the May 4, 2003 incident, the federal government declined to prosecute Mr. Sanchez after he pled guilty in state court to crimes arising from the incident. The Government's case against Mr. Sanchez

9

would have been very strong, as the Court in its July 24, 2004 Memorandum Opinion and Order found that the Government had presented sufficient evidence to establish beyond a reasonable doubt that Mr. Sanchez had committed the crimes of carjacking and using a firearm in a crime of violence.  In fact, Mr. Sanchez' guilty plea in state court to charges arising from the incident would have provided further support to any possible federal prosecution.  The Court believes that the Government's explanation for its threats—that Mr. Sanchez' testimony at the motion hearing would give the Government a stronger basis for federal charges—is disingenuous, and a mere endeavor to explain away the Government's attempts to intimidate a defense witness and prevent any possibility of a new trial.

      The Court acknowledges the Government retains broad discretion in determining the appropriate targets of prosecution.  However, the Government may not use its prosecutorial discretion as a weapon to deprive Defendant of his right to a fair trial.  In suppressing the potential exculpatory evidence of Mr. Sanchez' testimony by threatening prosecution, the Government's actions both violated Defendant's due process rights and interfered with the judicial fact-finding process.

      The appointment of independent counsel for Mr. Sanchez did little to mitigate the Government's interference with Mr. Sanchez' decision to testify.  The Court has no doubt that after learning of such threats of prosecution as a result of giving testimony, independent counsel would have little choice but to advise her client to invoke his Fifth Amendment rights against self-incrimination.  Mr. Sanchez was ready and willing to testify on behalf of Defendant, and failed to do so only because of the substantial interference of the Government.  The Court therefore finds that the Government, by substantially interfering with a defense witness' decision whether to

testify, has violated Defendant's due process rights.

### 2. *Remedy*

Having found a violation of Defendant's due process rights, the Court must next fashion an appropriate remedy. Although it is not entirely clear what remedial measures Defendant seeks, Defendant appears to argue that the Government's misconduct entitles him to a new trial.

In formulating a remedy, the Court is cognizant that the purpose of due process is to provide a fair trial to the accused, not punish a prosecutor for misconduct, and is aware of the general principal that remedies should be tailored to fit violations. *Cf. Smith v. Phillips*, 455 U.S. 209, 220 n.10 (1982); *United States v. Morrison*, 449 U.S. 361, 365 (1980). The Court is also cognizant that "[e]very slight excess of the prosecution does not require that a verdict be overturned and a new trial ordered." *United States v. Chapman*, 615 F.2d 1294, 1301 (10th Cir.), *cert. denied* 446 U.S. 967 (1980).

The Court believes that the Government's actions deprived Defendant of a fair hearing on his motion for a new trial, because Mr. Sanchez' testimony may very well have provided the basis for the grant of a new trial and an eventual acquittal. This is especially true considering the fact that there is some room for debate as to whether the evidence presented at the first trial was sufficient to establish Defendant's guilt beyond a reasonable doubt. Further, there is no indication that Mr. Sanchez' material and exculpatory testimony would be untruthful. And, as discussed above, the Court finds that Mr. Sanchez would have testified in favor of Defendant but for the Government's overreaching.

However, the Court believes that a narrower remedy will adequately ensure that Defendant receives a fair trial, namely, by requiring the Government to request a grant of use

11

immunity for Mr. Sanchez during an evidentiary hearing on Defendant's motion for a new trial and any possible retrial or face dismissal of the indictment for prosecutorial misconduct. Over twenty years ago, the Tenth Circuit held that "the power to apply for immunity . . . is the sole prerogative of the government being confined to the United States Attorney and his superior officers." *United States v. Hunter*, 672 F.2d 815, 818 (10th Cir. 1982). Thus, courts have no inherent authority to grant a defense witness use immunity. *Id. Accord United States v. LaHue*, 261 F.3d 993, 1014 (10th Cir. 2001). However, the Tenth Circuit has explicitly reserved ruling on whether a court may "compel a United States attorney, on pain of dismissal, to grant immunity when the prosecutor deliberately denies immunity in an attempt to distort the fact finding process." *Serrano*, 406 F.3d at 1218 n.2. *See also LaHue*, 261 F.3d at 1014-15.

The United States Court of Appeals for the Second Circuit has addressed this issue. The Second Circuit has recognized that a court may impose on the Government a choice between granting a defense witness immunity or facing dismissal of an indictment in very limited circumstances. *United States v. Dolah*, 245 F.3d 98, 105 (2d Cir. 2001), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004); *United States v. Bahadar*, 954 F.2d 821, 825 (2d Cir.), *cert. denied*, 506 U.S. 850 (1992). These circumstances exist when the defendant establishes the following three elements:

> First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment. Second, the witness's testimony must be "material, exculpatory, and not cumulative". Third, the testimony must be unobtainable from any other source.

*Bahadar*, 954 F.2d at 825. The Court agrees with the Second Circuit that a district court may

order the Government to request use immunity on pain of dismissal when the court finds that these three elements are met.  The Court further finds that this line of precedent provides the most appropriate avenue to remedy the Government's violation of Defendant's due process rights.

First, as discussed above, the Government, by improperly threatening Mr. Sanchez with prosecution for federal crimes arising from the May 4, 2003 incident if he testifies, has forced Mr. Sanchez to invoke his Fifth Amendment rights against self-incrimination.  Thus, the Government, "through its own overreaching, has forced [Mr. Sanchez] to invoke the fifth amendment." *Id.* Mr. Sanchez was the principal actor in the May 4, 2003 carjacking of Mr. Tabarez' truck.  As such, his testimony is material and not cumulative because it will relate to crucial issues that will arise in resolving Defendant's motion for new trial and possible retrial.  For example, Mr. Sanchez may be able to testify about whether he discussed his intention of committing the carjacking with Defendant before forcibly taking Mr. Tabarez' truck.  Further, as Mr. Sanchez was the principal actor in the carjacking, he is in a unique position to testify about the carjacking, and his testimony would not be obtainable from any other source.  Finally, Mr. Sanchez' July 9, 2004 letter demonstrates that Mr. Sanchez' testimony will more likely than not be exculpatory.  Thus, the Court finds that it may properly use its coercive powers to impose on the Government a choice involving defense witness immunity.

Therefore,  the Government must either request use immunity for Mr. Sanchez under 18 U.S.C. § 6003 or face dismissal of the indictment against Defendant for its attempt to distort the fact finding process by improperly intimidating Defendant's witness.  In order to avoid dismissal of the indictment, the Government must first request use immunity for Mr. Sanchez' testimony at

a hearing to be held on Defendant's Motion for a New Trial. If the Court determines that Mr. Sanchez' testimony entitles Defendant to a new trial under FED. R. CRIM. P. 33, the Government will also be required to request use immunity for Mr. Sanchez' testimony at the new trial. If the Government does not request use immunity for Mr. Sanchez as detailed above, the Court will enter an order dismissing the indictment, with prejudice.[4]

The Court believes that this course of action most adequately ensures that Defendant is afforded the fair process that he was denied. Through the Government's overreaching, Mr. Sanchez was forced to invoke his Fifth Amendment rights and therefore forego supporting Defendant's motion for a new trial. By requiring the Government to request use immunity to Mr. Sanchez or face dismissal, the Court is attempting to mitigate any prejudice to the Defendant caused by the Government's actions, without attempting to unduly burden and punish the Government.

Moreover, by requiring dismissal if the Government chooses not to request use immunity for Mr. Sanchez, the Court ensures that Defendant is not afforded an empty remedy since a retrial without the potential material and exculpatory testimony of Mr. Sanchez would not fully vindicate Defendant's rights. The relevant portions of Mr. Sanchez' July 9, 2004 letter and notarized statement that exculpate Defendant would not be admissible at trial as statements against Mr. Sanchez' interest under FED. R. EVID. 804(b)(3) since those exculpatory portions are not against Mr. Sanchez' interest. *See Williamson v. United States*, 512 U.S. 594 (1994) (holding that

---

[4] The Court is aware that the Government is not barred from seeking federal charges against Mr. Sanchez. The Court expresses no opinion at this time on whether Mr. Sanchez would have a valid claim for prosecutorial vindictiveness as a defense against any subsequent federal prosecution.

statements collateral to statements against penal interest are not admissible under FED. R. EVID. 804(b)(3) unless the collateral statements are also against penal interest).  Thus, Defendant would not have any new evidence to present at a new trial without Mr. Sanchez' testimony.  Thus, in order to mitigate the constitutional harm to Defendant arising from the Government's actions, the Court finds that the Government must request use immunity for Mr. Sanchez or face dismissal of the indictment.

  IT IS THEREFORE ORDERED THAT an evidentiary motion hearing on Defendant's Motion for a New Trial is scheduled on Tuesday, September 19, 2006 at 1:30 p.m. at the United States Courthouse, Las Cruces, New Mexico.

  IT IS FURTHER ORDERED THAT the Government request use immunity for Defendant's witness, Robert Walter Sanchez, under 18 U.S.C. § 6003 by September 8, 2006. The use immunity will immunize any testimony Mr. Sanchez may proffer at the September 19, 2006 motion hearing.  Further, the Government must request use immunity for Mr. Sanchez at any possible new trial in the case.

  If the Government does not request use immunity as detailed above, then Counts One and Two of the Indictment will be dismissed, with prejudice.

  IT IS FURTHER ORDERED THAT Defendant Eddie Vallejos' voluntary surrender date is extended to October 1, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE