IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                             Case No. CR 03-2241 JP

EDDIE VALLEJOS,

        Defendant.

MEMORANDUM OPINION AND ORDER

        On March 10, 2006, Defendant Eddie Vallejos filed a Motion for New Trial (Doc. No. 54) based on his discovery of new evidence in the form of a notarized statement and an offer of testimony from Robert Walter Sanchez.  On May 30, 2006, at an evidentiary hearing on Defendant's Motion for New Trial, Mr. Sanchez invoked his Fifth Amendment right against self-incrimination and refused to testify on behalf of the Defendant.  Based upon statements made by counsel for the United States at that hearing, the Court found that the Government substantially interfered with Mr. Sanchez' decision to testify.  On August 24, 2006, the Court issued a Memorandum Opinion and Order (Doc. No. 71) in which it ordered the Government to request use immunity for Mr. Sanchez under 18 U.S.C. § 6003 to immunize any testimony Mr. Sanchez would proffer at an evidentiary hearing scheduled for September 19, 2006.

        On September 8, 2006, the Government filed a Motion to Reconsider Memorandum Opinion and Order Filed August 24, 2006 (Doc. No. 75).  In light of the fact that the Government did not request use immunity so that Mr. Sanchez would be in a position to testify at the evidentiary hearing on September 19, 2006, the Court instead heard arguments on the motion to

reconsider. The Court invited Marcia Milner, the attorney who had been assigned as independent counsel for Mr. Sanchez, to attend the September 19, 2006 hearing, and the Court has taken into account representations Ms. Milner made at the hearing. After careful review, the Court concludes that Defendant has not presented evidence sufficient to merit a new trial and that statements by counsel for the United States, in fact, did not substantially interfere with Mr. Sanchez' decision to testify. Therefore, the Government's Motion to Reconsider Memorandum Opinion and Order Filed August 24, 2006 (Doc. No. 75) will be granted and Defendant's Motion for New Trial (Doc. No. 54) will be denied.

## *I. Background*

The events giving rise to the present situation began on May 4, 2003, at a Cinco de Mayo celebration in Roswell, New Mexico. During the celebration, Mr. Sanchez forcibly took Raul Tabarez' black Chevrolet Extreme pickup truck by placing a gun against Mr. Tabarez's ribs and ordering him to "get out." Defendant, who was standing near Mr. Sanchez when this exchange took place, jumped into the bed of the truck shortly before Mr. Sanchez recklessly drove away from the scene. Defendant was subsequently arrested by the Roswell Police Department.[1] On May 12, 2005, Mr. Sanchez voluntarily surrendered himself to arrest by the Roswell Police Department.

On October 22, 2003, Mr. Sanchez pled guilty in the District Court of Chavez County in the Fifth Judicial District of the State of New Mexico to numerous state charges arising from the May 4, 2003 incident (Doc. No. 41, at 3 n.2) (Transcript of jury trial, April 21, 2004, at 254, 258-

---

[1] A full description of the relevant facts of this case is set forth in the Court's July 24, 2004 Memorandum Opinion and Order (Doc. No. 41).

263).[2] Although federal officials were involved with the investigation of the case, Mr. Sanchez has not been prosecuted by the federal government for his actions.

However, on November 5, 2003, a federal grand jury returned a two count indictment against Defendant, charging him with aiding and abetting Mr. Sanchez in the federal offenses of carjacking and using a firearm in a crime of violence. A jury trial was held from April 20 through April 22, 2004. Because the Government relied on an aiding and abetting theory of culpability, one of the primary issues at trial was whether Defendant associated in the carjacking by sharing Mr. Sanchez' requisite conditional intent. The Court found that Mr. Sanchez' conditional intent could be inferred by evidence establishing that Mr. Sanchez used a gun in the incident. Likewise, Defendant's intent to associate himself with Mr. Sanchez' crime could be established by evidence supporting a finding that Defendant knew Mr. Sanchez used a gun. Therefore, the primary dispute at trial was whether Defendant saw Mr. Sanchez place the gun against Mr. Tabarez' ribs or otherwise knew Mr. Sanchez used a gun in the incident.

On April 22, 2004, the jury found Defendant guilty of the crimes of aiding and abetting a carjacking in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2 (Count I), and of aiding and abetting brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2 (Count II). After the jury returned its verdict, Defendant filed on May 10, 2004 a Memorandum of Law in Support of Judgment of Acquittal (Doc. No. 38). On July 24, 2004, the Court granted Defendant's motion, acquitted Defendant of all charges, and

---

[2] As noted in the Court's Memorandum Opinion and Order, Mr. Sanchez pled guilty to charges of robbery; aggravated assault; receipt, transportation, or possession of firearms; criminal damage to property; and resisting, evading, or obstructing an officer (Doc. No. 41, at 3 n.2).

dismissed the indictment (Doc. Nos. 41 - 42).  In its Memorandum Opinion and Order (Doc. No. 41) granting Defendant's motion, the Court concluded that there was insufficient evidence to support a reasonable inference that Defendant knew Mr. Sanchez used a gun in the carjacking. Consequently, the Court ruled that there was insufficient evidence to support a finding that Defendant associated with the carjacking by sharing Mr. Sanchez' requisite conditional intent.

The Government appealed the Court's judgment of acquittal to the United States Court of Appeals for the Tenth Circuit.  The Tenth Circuit reversed the Court's judgment in a 2-1 decision and instructed the Court to reinstate the jury's verdict.  *United States v. Vallejos*, 421 F.3d 1119 (10th Cir. 2005).  In its opinion, a majority of the panel determined that the evidence presented at trial was sufficient to give rise to a reasonable inference that Defendant saw Mr. Sanchez use a gun in the carjacking.  In particular, the majority thought the Court placed too much emphasis on Defendant's significant visual impairment.  In his dissent, Circuit Judge McKay agreed with the Court that the evidence at trial was not sufficient to establish Defendant's guilt beyond a reasonable doubt.

In his Motion for New Trial (Doc. No. 54), Defendant argues that he is entitled to a new trial based on newly discovered evidence, the notarized statement of Mr. Sanchez. Before trial was held in April 2004, Defendant's investigator had attempted to interview Mr. Sanchez to acquire information about the May 4, 2003 incident.  However, Mr. Sanchez refused to speak with Defendant's investigator.  Apparently, at that time Mr. Sanchez held a personal grudge against Defendant and was angry because Defendant had disclosed incriminatory information about Mr. Sanchez to the police during the investigation of the crime.

However, several months after trial, Defendant received a letter from Mr. Sanchez

expressing remorse for allowing Defendant to be convicted.  The letter[3] states:

> Here's a letra, to help out, if it's not to late!  I got it notarized too!
> You can have that investigator come talk to me, or call me to
> court!  Spénca for letting you fall for nátha!  I'm not going to hold
> a pi?che gruge over Sonya!  But I know it wasn't right talking to
> the pi?che húda!  I know you never said my name, but you let them
> know everything else!  Either way I'm going to let that shit go!  It's
> over!  I will do my tiempo like a fucken soldier!  As far as I'm
> concerned, nothing ever happened between us!  <u>Oróle</u>!!!  Well at
> least appeal the case if you have gotten sentenced!  (<u>My word</u>) I'll
> be there!
>                    Alrato
>                            - Walter-

(Doc. No. 54, Ex. B).  This notarized statement was attached to the letter:

> To whom it may concern:
> On the 5th of May 2003, I Robert Sanchez was riding around with
> Amanda Vallejos!  We picked up Eddie Vallejos!  Then we went by
> the Park (Cahoon Park)!  I got out of the van and started walking
> with the traffic!  I was drunk and really tired!  I did walk up to a
> truck and told the guys to get out at gun point!  Before I got in the
> truck I looked back and I saw Eddie on the other side of the truck,
> barley getting up to the truck!  I remember telling him to get in the
> back!  He (Eddie Vallejos) didn't know what I was doing!  I didn't
> even know myself, until I actually did what I did!   Eddie or
> Amanda didn't know about the gun either!

(Doc. No. 54, Ex. B).  The notarized statement is signed by Mr. Sanchez.  Although the statement is dated July 9, 2004, Defendant represented that he did not receive the letter and notarized statement until fifteen months after trial.  In his motion, Defendant indicated that Mr. Sanchez was now willing to testify on behalf of Defendant.  Defendant argued that Mr. Sanchez' testimony at an evidentiary motion hearing would provide a basis for a new trial, and requested that the Court provide him an opportunity to present Mr. Sanchez' exculpatory testimony.

---

[3]  Mr. Sanchez' letter and notarized statement are quoted without grammatical or spelling corrections.

The Government filed a response (Doc. No. 56) in opposition to Defendant's motion in which the Government faulted Defendant for failing to subpoena Mr. Sanchez during trial, in spite of uncertainty about the testimony Mr. Sanchez would give. The Government further argued that the Court should deny Defendant's motion without an evidentiary hearing. However, the Government requested that independent counsel be appointed for Mr. Sanchez if an evidentiary hearing were to be held. The Government's response noted that "the Government is not rendering any opinion at this point about whether Mr. Sanchez would be charged with Carjacking or Brandishing a Firearm During a Crime of Violence if he were to admit to having committed these crimes at a judicial proceeding, or otherwise. Furthermore, it will unlikely be undersigned counsel's decision to charge Mr. Sanchez with these federal crimes because counsel is being activated for military duty by the United States Army on March 20, 2006, for a period of one year." (Docket No. 56, at 10 n.3). The Government's response was signed by Assistant United States Attorney Randy Castellano.

On May 30, 2006, the Court held an evidentiary hearing on Defendant's motion for a new trial. Defendant was present at the hearing and was represented by Attorney Bernadette Sedillo. The Government was represented by Assistant United States Attorney Amanda Gould. Mr. Sanchez was also present at the hearing and was seated in the courtroom.

After counsel stated their appearances, the following exchange took place:

> THE COURT: Okay. The hearing this afternoon is an evidentiary hearing on the defendant's motion for a new trial. Let me ask Ms. Sedillo, do you want to go ahead and present your first witness?
>
> MS. SEDILLO: Yes, your honor.
>
> MS. GOULD: Your Honor, if I may before we hear testimony

>from this witness, in his motion Mr. Castellano requested that the Court consider appointing Mr. Sanchez an attorney to explain to him what his possible penalties could be were he to be charged in a federal case which would result maybe from any testimony he would put forth on the stand today, and I would just put that out there, your Honor. I did review Mr. Sanchez' criminal history. Were he to be charged with carjacking and brandishing a firearm during a crime of violence, he could be facing significant time at the federal level if the decision were made to go ahead and prosecute him for those two crimes, which are different crimes for those which he received convictions at the state level.
>
>THE COURT: Okay. Well, let me ask Ms. Sedillo, have you discussed with Mr. Sanchez the matter of his ability to assert a Fifth Amendment right?
>
>MS. SEDILLO: Your Honor, yes, I did tell him that the Government might request that an attorney be appointed to represent him and that I wasn't in a position to counsel him with regards to what he should do but that the decision would be his as to whether to assert a Fifth Amendment right or not. But from talking to him, he told me that he would be willing to testify. I don't know. If we could address him and ask him at this point.
>
>THE COURT: Well, I think he needs independent counsel to advise him. I don't know who we could get on short notice to do that. Why don't we recess and let me go see if it's possible to find somebody.
>
>MS. SEDILLO: Thank you, your Honor.

(Trans. May 30, 2006, at 1-2). The Court appointed Attorney Marcia Milner as independent counsel for Mr. Sanchez. After consulting with counsel during a forty-minute recess, Mr. Sanchez decided to invoke his Fifth Amendment right against self-incrimination and refused to testify. Mr. Sanchez remained in the courtroom for the duration of the hearing.

During the remainder of the hearing, counsel for Defendant argued that the Government's threat to charge Mr. Sanchez if he should testify was unconscionable. The Government's attorney

proffered the following explanation:

> MS GOULD:  Well, your Honor, to begin with and to defend our position as far as the possible prosecution of Mr. Sanchez—because that's just what it is, of course.  We haven't sought to charge him at this point.  Were he to get on the stand today and essentially make a confession on the record before this Court, which has not been done prior to this time, that of course would give the Government a lot more to work with in a case against Mr. Sanchez than what there previously was.  So that having been said, it seemed the right thing to do is make sure Mr. Sanchez was advised of what his rights are and what the offenses are and that are different on the federal level than on the state level, but—and of course having walked in this late I am at a bit of a disadvantage, although I did read every page of what there was in the discovery and the transcripts that were made available to me in taking over this case from Mr. Castellano.

(Trans. May 30, 2006, at 6).   The Court ordered supplemental briefing on the issues arising from the May 30, 2006 motion hearing.

As discussed above, the Court ruled in its Memorandum Opinion and Order of August 24, 2006 (Doc. No. 71) that the Government had substantially interfered with Mr. Sanchez' decision to testify.  At the September 19, 2006 hearing on the motion to reconsider, the Court heard arguments from Attorney Bernadette Sedillo and Assistant United States Attorney Kelly Burnham.  Ms. Milner, counsel for Mr. Sanchez, was also present and represented that Mr. Sanchez would continue to invoke his Fifth Amendment rights at any subsequent hearings.  Ms. Milner noted that Mr. Sanchez is reluctant to testify because of the possibility of federal prosecution based on his statements, and because he may open the door to new state charges being brought against him which would not be covered by use immunity from the federal government.  In addition, Ms. Milner and Mr. Sanchez are concerned about possible perjury charges.  The Court concludes that these concerns are well-founded.

Furthermore, Ms. Milner represented that because Mr. Sanchez was intoxicated at the time, he does not recall exactly the events of the day of his arrest, and therefore may not be able to testify accurately as to where Defendant was during the carjacking and about whether or not Defendant saw Mr. Sanchez' gun. Because of these factors, Ms. Milner stated that she had advised Mr. Sanchez not to testify on Defendant's behalf.

Faced with Mr. Sanchez' decision not to testify, Defendant's attorney, Ms. Sedillo, argued that Defendant would attempt to use Mr. Sanchez' written statement as the basis for a new trial.

## *II. Analysis*

### *Admissibility of Evidence*

Rule 33 provides in part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A new trial based on newly discovered evidence is warranted if a defendant shows that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Gwathney,* -- F.3d -- , 2006 WL 2734108, *7 (10th Cir. Sept. 26, 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997)). A trial court is afforded discretion in ruling on a motion for new trial, and may weigh the evidence and assess witness credibility. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). However, motions on this ground are not favored by the courts and "should be granted only with great caution." *United States v. Combs,* 267 F.3d 1167, 1176 (10th Cir. 2001); *United States v. Youngpeter,* 986 F.2d 349, 356

(10th Cir. 1993).

Because of Mr. Sanchez' decision not to testify on behalf of Defendant, the only evidence before the Court is Mr. Sanchez' written, notarized statement.  Before addressing the *Sinclair* factors described above, the Court must examine the admissibility of this evidence.  Defendant argues that the statement is admissible as a statement against interest under Fed. R. Evid. 804(b)(3), which reads:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In order for hearsay evidence to be admissible under Rule 804(b)(3), a defendant must show "(1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to indicate the trustworthiness of the statement."  *United States v. Spring*, 80 F.3d 1450, 1460 (10th Cir. 1996) (citation omitted).  While the first element is uncontested by the Government and the second element is satisfied by the inculpatory nature of the declarations in the statement, Defendant has failed to demonstrate that the evidence satisfies the third element.

Defendant mistakenly focuses on how Mr. Sanchez' statement is corroborated by the testimony of the fact witnesses that the Government called at trial.  "To determine whether a statement is sufficiently trustworthy for admission under Rule 804(b)(3), the court is not to focus on whether other evidence in the case corroborates what the statement asserts, but rather on whether there are 'corroborating circumstances which clearly indicate the trustworthiness of the statement itself.'"  *United States v. Franklin*, 415 F.3d 537, 547 (6th Cir. 2005) (internal

quotation marks and citation omitted). The Government notes that Defendant testified at trial that he was not well acquainted with Mr. Sanchez and only saw him "a few times around the neighborhood." *United States of America v. Eddie Vallejos,* Transcript of Proceedings of Jury Trial, April 21, 2004, p.290. Mr. Sanchez' statement, however, indicates a prior relationship between the Defendant and Mr. Sanchez by referencing among other things, Mr. Sanchez' grudge toward the Defendant over a woman named Sonya and Mr. Sanchez' desire "to help out, if it's not to [sic] late!" (Doc. No. 54, Ex. B). The conflicting nature of these declarations calls into question the trustworthiness of Mr. Sanchez' statement.

In addition, because Mr. Sanchez had already been sentenced and incarcerated by the state court when he wrote the statement, it is likely that Mr. Sanchez believed that he was immune to further prosecution by both the state and federal governments. This is evidenced by the fact that Mr. Sanchez immediately invoked his Fifth Amendment privilege upon learning that he is still subject to prosecution by the federal government for his actions on May 4, 2003. This further attenuates the trustworthiness of the statement. *See e.g., United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002) ("Courts generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect . . . The rationale for casting a skeptical eye on such exculpatory testimony is manifest. It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves. They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial. Such testimony would be untrustworthy and should not be encouraged").

Finally, in the statement itself, Mr. Sanchez candidly notes that he was "drunk and really

11

tired . . . He (Eddie Vallejos) didn't know that I was doing!  I didn't even know myself, until I actually did what I did!" (Doc. No. 54, Ex. B).  Given Mr. Sanchez' inebriated condition at the time of the events that he describes in the statement and the fact that over a year had passed before he wrote it, the Court finds that the totality of the circumstances indicate that there is not sufficient corroboration of the trustworthiness of Mr. Sanchez' statement and that consequently it is inadmissible.  *Spring*, 80 F.3d at 1460.  The Court also notes that even if Mr. Sanchez' statement were to be found admissible under Federal Rule of Evidence 804(b)(3), Defendant would not be able to authenticate it under Federal Rule of Evidence 901(b)(2) because of his lack of familiarity with Mr. Sanchez' handwriting, based on his professed lack of familiarity with Mr. Sanchez as an individual.  *See United States v. Apperson*, 441 F.3d 1162, 1200-01 (10th Cir. 2006) (finding that a witness' familiarity with one of the defendant's handwriting was properly based on a "long-standing association").

*The Sinclair Factors*

Even if Mr. Sanchez' statement were admissible, the Court concludes that it would still fail to satisfy the fifth of the enumerated *Sinclair* factors.[4]  In the opinion in *Vallejos,* 421 F.3d 1119, the majority of the Tenth Circuit panel specifically focused on whether Defendant shared Mr. Sanchez' intent to commit the carjacking.  In regard to that, the majority summarily stated that "Mr. Vallejos saw the gun and therefore had the requisite intent to aid and abet the carjacking."  *Id*. at 1125.  While Mr. Sanchez' statement does mention that "Eddie . . . didn't know about the gun either" (Doc. No. 54, Ex. B), it does not offer any additional insight into

---

[4] While both parties have extensively briefed the *Sinclair* factors with relation to Mr. Sanchez' proffered testimony, the Court finds that Mr. Sanchez' decision not to testify has mooted those arguments.

what Defendant actually saw or could have seen at the time of the carjacking. The absence of pertinent, precise information in the statement regarding critical facts, the statement's ambiguity, and the statement's candid admission that Mr. Sanchez was an impaired witness all suggest that in a new trial, the statement would not lead to an acquittal. Defendant simply has failed to establish a proper basis for a grant of a new trial under Fed. R. Crim. P. 33.

*Statements by Assistant United States Attorney*

In its August 24, 2006 Memorandum Opinion and Order (Doc. No. 71), the Court concluded that statements made by the Assistant United States Attorney at the hearing on May 30, 2006 substantially interfered with Mr. Sanchez' decision to testify on Defendant's behalf. Mr. Sanchez, the prospective witness, was present in the courtroom when the statements were made by the Assistant United States Attorney. After the statements were made, the Court appointed Attorney Marcia Milner to represent Mr. Sanchez and to counsel him regarding his testimony. Following a recess in which Ms. Milner conferred with Mr. Sanchez, Mr. Sanchez declined to testify.

"Substantial governmental interference with a defense witness's decision to testify violates a defendant's due process rights." *United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983). In determining whether a prosecutor's interference with a potential defense witness has violated a defendant's due process rights, the central question is "whether the government actor's interference with a witness's decision to testify [is] 'substantial.'" *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005) (quoting *Crawford*, 707 F.2d at 449). A prosecutor may violate a defendant's constitutional rights by "actively discourag[ing] a witness from testifying through threats of prosecution, intimidation, or coercive badgering." *Id.* (citing *United States v.*

13

*Smith*, 997 F.2d 674, 693 (10th Cir. 1993)). "The potential for unconstitutional coercion by a *government actor* significantly diminishes, however, if a defendant's witness elects not to testify after consulting an independent attorney." *Id.* (emphasis in original).

At the hearing on September 19, 2006, Ms. Milner told the Court that she had advised Mr. Sanchez not to testify in part because his testimony could result in a federal prosecution for the charges mentioned by the Assistant United States Attorney at the May 30, 2006 hearing, but also because of the risk of prosecution for perjury and for state court offenses with which Mr. Sanchez had not previously been charged. In addition, Ms. Milner stated that in conferring with Mr. Sanchez, she did not have the impression that statements made by the Assistant United States Attorney at the May 30, 2006 hearing in Mr. Sanchez' presence, but before Ms. Milner was appointed to represent him, influenced Mr. Sanchez' decision not to testify. Instead, Ms. Milner indicated that she believed Mr. Sanchez acted on her advice, independent of whatever the Assistant United States Attorney said prior to Ms. Milner being assigned to represent Mr. Sanchez.

Moreover, at the hearing on September 19, 2006, Attorney Bernadette Sedillo, counsel for Defendant, said that she did not believe the Assistant United States Attorney made the statements at the May 30, 2006 hearing maliciously, but rather because of "being recently appointed to the case and maybe not fully understanding the procedural history of the case." (Trans. Sept. 19, 2006, at 26). The Court also stated, on the record, that there was no indication that the Assistant United States Attorney "was doing this maliciously" or that "she was deliberately intending to intimidate the witness[.]" (Trans. Sept. 19, 2006, at 24).

The initial part of the statement by the Assistant United States Attorney made on May 30,

2006 to the effect that independent counsel should be appointed to advise Mr. Sanchez of his rights as a prospective witness, was entirely proper.  Had the Assistant United States Attorney stopped at that point, there would have been no problem.  The Court was concerned about a later statement by the Assistant United States Attorney that after reviewing Robert Sanchez' criminal history, she concluded he would be facing "significant time at the federal level" if the federal government decided to charge him with carjacking and brandishing a firearm during a crime of violence.  (Trans. May 30, 2006 at 2).  In addition, the Court was concerned about two additional statements: first, that if a decision were made to prosecute Mr. Sanchez in federal court, it would be for crimes which were different from the ones to which Mr. Sanchez pled guilty in state court; and second, that were Mr. Sanchez to testify at the May 30, 2006 hearing and "essentially make a confession on the record . . . that of course would give the government a lot more to work with in a case against Mr. Sanchez[.]"  (Trans. May 30, 2006 at 6).  The Court believed that Mr. Sanchez, having heard these statements, would be dissuaded from testifying because of the possibility that his testimony would "give the government a lot more to work with in a case against [him]" and because of the implicit threat of a possible federal court prosecution for separate crimes that could result in him "facing significant time at the federal level[.]"  *Id.* at 2, 6.

      The Court's concern was significantly ameliorated by the representations of Ms. Milner at the September 19, 2006 hearing to the effect that she believed Mr. Sanchez' decision not to testify was based on her advice and was not significantly impacted by the statements of the Assistant United States Attorney at the May 30, 2006 hearing.  In view of this, it appears that the statements by the Assistant United States Attorney probably did not substantially interfere with Mr. Sanchez' decision not to testify.  This is an additional reason for denying Defendant's Motion

for New Trial.

IT IS THEREFORE ORDERED THAT the Government's Motion to Reconsider Memorandum Opinion and Order Filed August 24, 2006 (Doc. No. 75) will be GRANTED.

IT IS FURTHER ORDERED THAT Defendant's Motion for New Trial (Docket No. 54) is DENIED.

IT IS FURTHER ORDERED THAT Defendant Eddie Vallejos must place himself in the custody of the United States Marshal on October 1, 2006, his voluntary surrender date.

_____
SENIOR UNITED STATES DISTRICT JUDGE